690 So.2d 641 (1997)
Sara BROWN, et al., Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Amber G'SELL, et al., Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Nos. 96-297, 96-298.
District Court of Appeal of Florida, First District.
March 10, 1997.
Rehearing Denied April 9, 1997.
*642 James Harvey Tipler, The Tipler Law Firm, Fort Walton Beach, for appellants.
Robert A. Butterworth, Attorney General; Charlie McCoy, Assistant Attorney General; Wendy S. Morris, Assistant Attorney General, Tallahassee, for appellee.
WOLF, Judge.
This is an appeal from final judgments dismissing negligence claims against the State Department of Health and Rehabilitative Services (HRS). We find that the trial court properly dismissed the claims based on sovereign immunity where HRS owed no statutory or common-law duty to the plaintiffs.
The complaints allege the following facts. In early 1990, Debra and Joseph Acosta made informal application with HRS for a child day-care license. A preliminary check of HRS records revealed to HRS that Joseph Acosta had a documented case of sexual abuse. A request was then made by the Acostas to eliminate Joseph from the application and proceed solely with Debra as director of Kare Free Day Care Center (Day Care). The files of HRS contained information of documented sexual abuse by both Joseph Acosta and his son, as well as allegations of sexual abuse made against Debra. HRS issued a license to operate Day Care effective July 11, 1990. As a condition to granting the license, it was orally agreed between HRS and the Acostas that Joseph Acosta would not visit Day Care. Joseph Acosta, however, continued to regularly visit the facility. In fact, when the facility closed at approximately 6:00 p.m., he transported some of the children to the Acostas' home for evening child care. On May 17, 1991, the Okaloosa County sheriff arrested Joseph Acosta and charged him with sexual battery on several children at the day-care facility. Acosta was tried on a two-count indictment and convicted of sexual battery on a child under 12 years old, and lewd and lascivious assault on a child under 16 years old.
*643 The complaints assert that HRS knew or should have known that as a consequence of its failure to monitor Day Care to ensure that Acosta did not have contact with the children, injuries would result. The complaints also allege that HRS had a duty to monitor and supervise the operation of Day Care so as to protect children in attendance from potential harm by Acosta where the risk of such harm was clearly foreseeable. Further, it stated that HRS had a statutory duty pursuant to section 827.07(11)(a)(4), Florida Statutes, to provide ongoing protective services to and on behalf of children in need of protection. By issuing a license to Day Care knowing that the spouse of the operator was a child abuser, the complaints allege a duty arose on the part of HRS to warn the parents of, or protect the children from, the danger which was not known to the parents or the children. Appellants argue on appeal that there was a duty to monitor, a duty to warn, and a statutory duty owed to the plaintiffs.
In Vann v. State, Department of Corrections, 662 So.2d 339 (Fla.1995), adopting the opinion of this court in State, Department of Corrections v. Vann, 650 So.2d 658, 660 (Fla. 1st DCA 1995), the test for determining the liability of governmental entities was pronounced:
(1) In determining the liability of a governmental entity for negligence, the court must look at two separate and distinct issues: (1) whether there exists a common law or statutory duty of care which inures to the benefit of the plaintiffs as a result of the alleged negligence, and (2) whether the alleged action is one for which sovereign immunity has been waived. Trianon Park [Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985)]. In Kaisner v. Kolb, 543 So.2d 732 (Fla.1989), the supreme court stated as to governmental liability "that a court must find no liability as a matter of law if either (a) no duty of care existed or (b) the doctrine of governmental immunity bars the claim." Id. at 734 (emphasis added).
Id. at 660. In Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla. 1985), the court recognized that the state is not liable for failure to enforce laws or to prevent criminal acts committed by third parties.
Third, there is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals. In addition, there is no common law duty to prevent the misconduct of third persons. See Restatement (Second) of Torts § 315 (1964).
Trianon Park, supra at 917-918.
The issuance of a permit, including the conditions attached thereto, is part of the regulatory enforcement activities for which no liability attaches.
Clearly, the legislature, commissions, boards, city councils, and executive officers, by their enactment of, or failure to enact, laws or regulations, or by their issuance of, or refusal to issue, licenses, permits, variances, or directives, are acting pursuant to basic governmental functions performed by the legislative or executive branches of government. The judicial branch has no authority to interfere with the conduct of those functions unless they violate a constitutional or statutory provision. There has never been a common law duty establishing a duty of care with regard to how these various governmental bodies or officials should carry out these functions. These actions are inherent in the act of governing.
Trianon Park, supra at 919. Monitoring of specific permit conditions by inspection is similar to the inspection of buildings for compliance with the building permit laws, which is an activity found to be within the enforcement realm of government and not subject to liability.
How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care.... This same discretionary power to enforce compliance with the law is given to regulatory officials such as building inspectors, fire department inspectors, *644 health department inspectors, elevator inspectors, hotel inspectors, environmental inspectors, and marine patrol officers.
Trianon Park, supra at 919. See also Everton v. Willard, 468 So.2d 936 (Fla.1985).
In both permitting and enforcement, there is a general duty to the public as a whole which does not constitute a duty to a particular individual. State, Department of Corrections v. Vann, supra at 661. Thus, HRS owed no common-law duty to the plaintiffs to monitor compliance with the permit condition.
In addition, this is not a case involving a duty to warn individual members of the public of a dangerous condition existing on property or premises controlled, maintained, or operated by the government. See Tucker v. Gadsden County, 670 So.2d 1053 (Fla. 1st DCA 1996), rev. denied, 679 So.2d 773 (Fla. 1996). The complaints do not allege the existence of any premises or location either owned, operated, or maintained by HRS. We therefore, reject the argument advanced by appellants that HRS had a duty to warn the prospective clients of the matters contained in the permit condition.
Appellants also argue that if no common-law duty was owed by HRS then section 827.07(11)(a)(4), Florida Statutes, created a statutory duty on the part of HRS to the plaintiffs. Appellants mainly rely on Department of Health and Rehabilitative Servs. v. Yamuni, 529 So.2d 258 (Fla.1988) for this proposition. This reliance is unavailing. In Yamuni, the court was looking at the particular statutory duty to a particular child after there had been reports that the child had been abused. Yamuni is similar to the situation in Department of Health and Rehabilitative Servs. v. Whaley, 574 So.2d 100 (Fla. 1991), where some level of custodial relationship had arisen between the child and HRS, creating liability based on a statutory relationship. In the instant case, there were no allegations of prior abuse to an individual child that created a custodial relationship between a particular minor and HRS. Therefore, no duty of care had arisen pursuant to chapter 827.[1]
Based on our determination that no common law or statutory duty existed, we affirm.
JOANOS, J., concurs.
VAN NORTWICK, J., dissenting with written opinion.
VAN NORTWICK, Judge, dissenting.
I agree fully with the majority that under Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985), no liability can attach simply based upon HRS' negligent issuance of a license to the Acostas to operate a child day care center. Nevertheless, based upon the specific statutory duty of care mandated here and the unique facts alleged in the instant case, I conclude that Trianon Park does not apply, and I respectfully dissent.
As the majority has correctly stated, where there is only a general duty to the public as a whole, there is no duty of care to an individual citizen which may give rise to liability. State, Department of Corrections v. Vann, 650 So.2d 658, 660 (Fla. 1st DCA), adopted in Vann v. State, Department of Corrections, 662 So.2d 339 (Fla.1995). The Florida Legislature, however, has imposed a statutory duty on HRS to ensure "the care and protection of children in child day care facilities." § 402.301(1), Fla. Stat. (1995). This statute mandates that children in day care centers, an identifiable group which includes the appellants, are a protected class distinct from the public generally. In Department of Health and Rehabilitative Services v. Yamuni, 529 So.2d 258 (Fla.1988), the supreme court ruled that the legislative scheme in chapter 827, which "designates children as a protected class of persons," id. at 261, imposed on HRS "a statutory duty of care to prevent further harm to children when reports of abuse are received." Id. Thus, the Yamuni court held that HRS could be held liable for negligence in operational activities which failed to prevent further harm to a child about whom HRS had received *645 abuse reports. Id. Similarly, here, the legislative scheme in chapter 402 imposes on HRS a duty of care to protect children in day care centers. Accordingly, as in Yamuni, I would hold that HRS could be found liable for negligence in performing or failing to perform operational activities necessary to fulfill that duty. See also Gagnon v. Rhode Island, 570 A.2d 656 (R.I.1990); Turner v. District of Columbia, 532 A.2d 662, 667 (D.C. 1987); Andrade v. Ellefson, 391 N.W.2d 836, 842-43 (Minn.1986).
Further, in their complaints, appellants allege that an additional special relationship existed between HRS and the children at the Acostas' day care center. This special relationship was created by HRS voluntarily undertaking to enter into an agreement with the Acostas by which HRS would grant to the Acostas a license to operate a day care facility on the condition that Joseph Acosta, who had a record of sexual abuse, would not be involved or present at the day care center. By undertaking this agreement, HRS assumed the duty to use reasonable care to protect the children in the Acostas' day care center by enforcing and overseeing the agreement as an additional operational activity in supervising the Acostas' center. Appellants argue, and I agree, that the negligent performance or failure to perform this operational activity and resulting breach of duty can also form the basis of a cause of action against HRS. See Everton v. Willard, 468 So.2d 936, 938 (Fla.1985); Hartley v. Floyd, 512 So.2d 1022, 1024 (Fla. 1st DCA), rev. denied, 518 So.2d 1275 (Fla.1987); Brown v. City of Delray Beach, 652 So.2d 1150, 1153 (Fla. 4th DCA 1995); see also Restatement (Second) of Torts § 324A (1982)(negligent performance of duty voluntarily undertaken creates liability).
Because of both the statutory duty of care imposed on HRS to protect children in day care centers and the allegations of special relationship in the complaints, I cannot agree that HRS is immunized from tort liability in the instant actions.
NOTES
[1] It is interesting to note that although chapter 402 is the HRS licensure statute, it is never mentioned as a basis for a statutory duty in either the complaints or the appellants' briefs.